UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS HILL, SR., :

    Petitioner : CIVIL ACTION NO. 3:25-1297

v. : (JUDGE MANNION)

WARDEN GREENE, :

    Respondent :

## MEMORANDUM

Presently before the court is a *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2241 to challenge a disciplinary sanction imposed by the United States Bureau of Prisons ("BOP") that resulted in petitioner losing good conduct time. The petition will be dismissed for failure to exhaust administrative remedies.

**I.  BACKGROUND**

Petitioner, Thomas Hill, Sr., is serving a federal prison sentence in Allenwood Low Security Correctional Institution ("LSCI-Allenwood"). He filed the instant petition on July 16, 2025, to challenge a disciplinary sanction imposed by the BOP. (Doc. 1).

The relevant disciplinary sanction arises from an incident on July 13, 2024, when Hill was housed in Lewisburg United States Penitentiary ("USP-Lewisburg. (*See* Doc. 8-9 at 4). On that date, a correctional officer came to

Hill's cell and instructed him to submit to handcuffs so that he could be transported to the prison's special housing unit. (*Id.*) Hill refused and purportedly stated, "I will fight you if you try to take me to SHU." (*Id.*) After Hill refused a second request to submit to handcuffs, officers attempted to place them on him, and Hill physically resisted. (*Id.*) During the incident, Hill grabbed an officer's wrist and attempted to pull him towards him. (*Id.*) The officers used force to get Hill to the floor and then handcuffed him. (*Id.*)

Hill was charged with misconduct for threatening bodily harm, assault, and refusing to obey an order. (*Id.*) A disciplinary hearing officer conducted a hearing on the charges on July 22, 2024, during which Hill testified that the charges had been brought in retaliation for a legal case he had filed against the prison's warden. (*Id.* at 5). Hill testified that the incident never happened and that he never physically resisted the officers. (*Id.*) Hill testified that during the incident, he refused to be placed in handcuffs because the officers would not tell him why he was being placed in handcuffs or being transported to the SHU. (*Id.*) The disciplinary hearing officer found Hill guilty of the misconduct charges and sanctioned him with a loss of 27 days of good conduct time and various other penalties. (*Id.* at 7).

On November 25, 2024, Hill filed a regional appeal challenging the DHO's decision and the resulting disciplinary sanction. (Doc. 8-4 at 4). The

BOP's administrative remedy coordinator rejected the appeal as improperly filed on December 5, 2024, noting that it improperly appealed multiple incidents at once. (*Id.*) Hill attempted to appeal the sanction again on December 2, 2024, but his appeal was rejected for the same reason on December 11, 2024. (Doc. 1-11 at 2; Doc. 8-4 at 4).

Hill next attempted to appeal the decision and sanction on January 10, 2025. (Doc. 1-11 at 3; Doc. 8-4 at 5). That appeal was rejected on January 13, 2025, because Hill was attempting to appeal more than one incident in a single appeal and because the appeal was untimely. (*Id.*) Hill was given ten days to properly refile the appeal. (*Id.*)

On January 31, 2025, Hill again attempted to appeal. (Doc. 1-11 at 4); Doc. 8-4 at 6). The appeal was rejected as untimely and because it contained too many pages. (Doc. 1-11 at 4). Hill was advised that he needed to submit a staff memo explaining why the appeal was late and that a similar staff memo was still required to explain the lateness of his original appeal. (*Id.*) The rejection noted that the original appeal was due on August 22, 2024, approximately three months before he filed the appeal. (*Id.*) Hill was again given ten days to correct the deficiencies in his filing. (*Id.*)

Hill filed another attempted appeal on February 19, 2025. (Doc. 1-11 at 5; Doc. 8-4 at 8). This appeal was again rejected as untimely. (*Id.*) The

3

rejection noted that Hill had submitted a staff memo with the appeal, but that it had not explained why the original appeal was untimely. (*Id.*) Hill filed another attempted appeal on March 17, 2025, which was rejected as untimely on March 24, 2025. (Doc. 1-11 at 6; Doc. 8-4 at 8). Finally, Hill attempted to appeal on April 14, 2025, but his attempt was rejected as untimely on April 24, 2025, with the rejection again noting that Hill had not submitted a staff memo explaining the untimeliness of his original appeal. (Doc. 1-11 at 7; Doc. 8-4 at 9). Hill did not file any more appeals at the regional level, and instead filed an appeal to the BOP's central office on May 20, 2025. (Doc. 1-11 at 8). The central office upheld the rejection of his appeals on June 5, 2025. (*Id.*)

Respondent argues that based on this administrative remedy history, the court should dismiss Hill's petition for failure to exhaust administrative remedies. (Doc. 8 at 11-15). Respondent argues in the alternative that the petition should be denied on its merits. (*Id.* at 15-23). Hill filed a reply brief on September 5, 2025, making the petition ripe for review. (Doc. 9).

## II.  DISCUSSION

Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims.

*Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986)); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion allows the agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy." *Id.* at 761-62. The BOP has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. *See* 28 C.F.R. §§542.10-.19. That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the regional director, and—ultimately—final appeal to the general counsel. *Id.* §§542.13-.15. No administrative remedy is considered fully exhausted until reviewed by the general counsel. *Id.* §542.15(a). When an inmate wishes to appeal a disciplinary hearing officer's appeal, his initial appeal goes directly to the regional director. *Id.* §542.14(d)(2).

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude habeas review. *Moscato*, 98 F.3d at 761. Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction. *Vasquez v. Strada*, 684 F.3d 431,

5

433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Exhaustion is likewise not required when it would be futile. *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982).

In this case, the record clearly demonstrates that Hill failed to exhaust administrative remedies. He filed numerous appeals of the relevant DHO decision and disciplinary sanction, but they were all rejected on procedural grounds, and he did not successfully appeal any of his appeals through all stages of administrative review. (*See* Doc. 1-11; Doc. 8-4).

Hill asserts three arguments as to why exhaustion should be excused. First, he asserts that he attempted to file appeals on July 25, 2024, and August 15, 2024, but that he was unable to do so because his inmate trust account was frozen and because he could not afford postage due to a "retaliatory surcharge." (Doc. 1 at 2). Hill explains in an affidavit that he attempted to purchase postage stamps to mail his appeal on August 15, 2024, but that his purchase was denied because his account listed an erroneous surcharge for $147,250.96. (Doc. 9 at 6). He purportedly remained unable to pay for any postage until October 29, 2024, when the surcharge was removed from his account. (*Id.*) Second, he argues the remedy process was rendered unavailable because his unit manager refused to provide a staff memo to explain the lateness of his filings. (Doc. 9

6

at 2). Hill explains in his affidavit that he requested the staff memo on June 16, 2025, but that the unit manager refused to provide it. (*Id.* at 6). Finally, he argues the remedy process was rendered unavailable when BOP staff failed to timely respond to his filings. (*Id.*)

Hill's arguments are unavailing. Hill asserts that he was unable to timely mail an appeal because of problems with his inmate trust account and obtaining postage, but the BOP's regulations allow an inmate to seek an extension of time to file an appeal if extenuating circumstances prevent him from timely filing it. *See* 28 C.F.R. §542.14(b). Hill did not move for an extension of time or otherwise seek to explain the lateness of his filings until June 16, 2025, nearly a year after the decision he sought to appeal. (*See* Doc. 9 at 6). His failure to seek an extension of time to file an appeal constitutes a failure to exhaust administrative remedies. *Talley v. Clark*, 111 F.4th 255, 263-64 (3d Cir. 2024).

The unit manager's purported failure to provide a staff memo to explain the untimeliness of Hill's appeal in June 2025 similarly does not excuse Hill's failure to exhaust administrative remedies. His own actions had already procedurally defaulted his appeals nearly a year earlier. Hill cannot resuscitate a long-dead administrative appeal by relying on prison officials' failure to respond to a request many months later.

Moreover, even if Hill's request for a staff memo could somehow restart the administrative remedy process, the unit manager's failure to respond to the request would not not allow Hill to deem the exhaustion process complete. Although a prison's failure to timely respond to a grievance or appeal may render a grievance process unavailable in certain circumstances, *see Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019), the relevant BOP regulation in this case specifically contains a deemed-denied provision stating that the inmate may treat the absence of a timely response as a denial. 28 C.F.R. §542.18. Once an appeal is deemed denied under this provision, the inmate is required to appeal as if he had received a denial in the ordinary course to complete the administrative exhaustion process. *See, e.g., Concepcion v. Warden Allenwood FCI*, 750 F. App'x 184, 186 (3d Cir. 2019); *VanBuren v. Sage*, No. 1:23-CV-971, 2024 WL 3597048, at *4 (M.D. Pa. July 31, 2024). Thus, even if Hill's obviously untimely request for a staff memo could restart his administrative remedy process, when the unit manager failed to respond to the request, Hill was required to file an additional appeal and could not simply rest on the failure to respond. This deemed-denied provision of the relevant regulations likewise renders Hill's final argument—that the process was rendered unavailable in general by prison officials' failure to timely respond to his appeals—meritless.

Accordingly, the court concludes that Hill failed to exhaust administrative remedies and that there is no valid reason to excuse this failure.

### III. CONCLUSION

For the foregoing reasons, the court will dismiss the petition for writ of habeas corpus for failure to exhaust administrative remedies. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated:   October 14, 2025**
25-1297-01